# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF MICHELLE ROBEY, Deceased, by Anastasia Robey, Administrator, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-CV-2378 |
| v. | ) ) ) ) | Hon. Amy J. St. Eve |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 26, 2016, Plaintiff, the estate of the decedent, Michelle Robey, brought the present eleven-count Complaint against Chicago Police Officers Stephen Romanski and Angela Storce and the City of Chicago (the "City"), collectively, "Defendants," alleging violations of her constitutional rights, along with several state law claims. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is the City of Chicago's motion to dismiss Plaintiff's Americans with Disabilities Act ("ADA") claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the City's motion to dismiss without prejudice.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## BACKGROUND

Plaintiff, Anastasia Robey, resides in Cook County, Illinois and is decedent's sister. (R. 16, Am. Compl. ¶ 3.) Defendants Romanski and Storce (the "Officer Defendants") were, at the time of incident at issue, Chicago Police Officers acting under color of state law. (*Id.* ¶¶ 6-7.)

On February 10, 2017, just before 6 PM, Michelle Robey ("Robey") was in the pharmacy section of a CVS drug store located at 3944 N. Western Avenue, Chicago, Illinois. (*Id.* ¶ 9.) Robey became upset, loud, and she exhibited symptoms of suffering an acute mental health crisis. (*Id.* ¶ 10.) A CVS pharmacist called 911 and reported Roby's conduct. (*Id.* ¶ 11.) Robey left the CVS store, went outside, and sat on a Chicago Transit Authority ("CTA") bench on the west side of Western Avenue. (*Id.* ¶ 12.) The Officer Defendants arrived, exited their vehicle, and approached Robey from behind. (*Id.* ¶ 13.) Plaintiff alleges that Robey then walked away from the Officer Defendants, but the Officer Defendants tazed her. (*Id.* ¶ 14.) Plaintiff alleges

2

that the Officer Defendants did nothing to de-escalate the situation and did not take into account Robey's mental health condition. (*Id.* ¶ 15.) According to Plaintiff, minutes later, Romanski and/or Storce fired their firearm at Robey and killed her. (*Id.* ¶ 16.) Plaintiff alleges that the City of Chicago failed to adequately investigate the shooting or impose discipline on the Officer Defendants and that the Officer Defendants conspired to make false reports about the incident claiming that Robey placed them in imminent fear of bodily harm in order to cover up their misconduct. (*Id.* ¶¶ 18-19.)

In her ADA claim, Plaintiff alleges that the Chicago Police Department ("CPD") is a program and service as defined by Title II of the ADA and thus, the ADA applies to the CPD. (*Id.* ¶¶ 58-59.) Robey had mental health disabilities through the time she was in contact with the Officer Defendants, but CPD and the Officer Defendants failed to reasonably accommodate Robey's mental health disabilities and to modify their operations and services to take her disabilities into account. (*Id.* ¶¶ 60-61.) Plaintiff alleges that Defendants' failure to accommodate Robey was the proximate cause of her death and the resulting damage to her estate. (*Id.* ¶ 62.)

## ANALYSIS

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. To prevail on an ADA claim against a public entity, a plaintiff must establish (1) that she is a "qualified individual with a disability," (2) that she was denied "the benefits of the services, programs, or activities of a public entity," and (3) that the denial or discrimination was because of her disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th

Cir.), *cert. denied*, 136 S. Ct. 321 (2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996); 42 U.S.C. § 12132).

The City argues that (1) Plaintiff has failed to establish that Robey was a "qualified individual" under the ADA; (2) Title II does not apply to the exigent circumstances alleged in Plaintiff's Complaint; and (3) Defendants did not discriminate against Robey or deny her benefits because of her disability. The Court addresses each argument in turn.

**I.     Qualified Individual**

The City argues that Plaintiff has not sufficiently alleged that Robey was a "qualified individual" because Plaintiff failed to allege the nature of Robey's mental illness, that her mental illness substantially limited any of her major life activities, or that there exists a record of Robey's mental illness.

The ADA provides that a person is a qualified individual if she (1) has a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015) (citing 42 U.S.C. § 12102(1)). Determining whether a plaintiff has a recognized disability is an individualized question which must be determined on a case-by-case basis. *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 631 (7th Cir. 1998). Here, Plaintiff has not alleged that there existed a record of Robey's mental illness or that she was regarded as having a mental impairment. Thus, for her claim to survive, Plaintiff must thus allege both (1) that Robey had a "mental impairment" and (2) that her mental impairment substantially limited a major life activity. The Court addresses each element in turn.

### A. Mental Impairment

The EEOC defines impairments as, in part, "Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

Here, Plaintiff has alleged that Robey "had mental health disabilities" and suffered "an acute mental health crisis." (Am. Compl. ¶¶ 10, 60.) Plaintiff did not provide any specific details about Robey's mental impairment in her Amended Complaint, however, in her Response, Plaintiff asserts that Robey had been diagnosed with bipolar schizoaffective disorder, and as such, was a qualified individual under the ADA. (R. 50, Pl.'s Resp. 4.) Plaintiff argues, and the City does not dispute, that the Court may consider Plaintiff's assertion about Robey's bipolar diagnosis under Seventh Circuit precedent because her assertion is consistent with the Amended Complaint. (City's Reply 1-2) (citing *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts . . . that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment"); *see also Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("Materials [in a] brief opposing dismissal may be considered, so long as those materials or elaborations are 'consistent with the pleadings.'"). Because the City concedes this point, the Court will consider Plaintiff's allegation that Robey had bipolar schizoaffective disorder.

The City also does not dispute that, as the Seventh Circuit and several courts in this District have recognized, bipolar disorder is a qualifying mental impairment under the ADA. *See, e.g.*, *Kiesewetter v. Caterpillar Inc.*, 295 F. App'x 850, 851 (7th Cir. 2008) ("Bipolar disorder is a mental impairment"); *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*,

133 F.3d 1054, 1059 (7th Cir. 1998) ("The EEOC has acknowledged that bipolar disorder . . . is a disability under the ADA."); *Paul v. Chicago Transit Auth.*, No. 14-CV-03259, 2017 WL 1178222, at *2 (N.D. Ill. Mar. 30, 2017) ("An emotional or mental illness like bipolar disorder may constitute" an impairment under the ADA) (citing 29 C.F.R. § 1630.2(h)(2)); *see also Paine ex re. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785397, at *5 (N.D. Ill. Feb. 26, 2010) (finding that bipolar disorder qualifies as an impairment under the ADA).

Accordingly, Plaintiff has sufficiently alleged that Robey's bipolar disorder was a mental impairment.

### B. Substantially Limiting

Even though Plaintiff has sufficiently alleged that Robey's bipolar disorder was a mental impairment under the ADA, she also must allege that Robey's bipolar disorder substantially limited a major life activity. *Kiesewetter*, 295 F. App'x at 851 (finding that while bipolar disorder was an impairment, plaintiff had failed to show that his mild bipolar disorder substantially limited major life activities). The ADA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). The Supreme Court has explained that major life activities "refers to those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002).

While the ADA merely provides that "substantially limits shall be interpreted consistently" with the purposes of the ADA, the EEOC has defined "substantially limited" as:

> Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under

which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); *see also Carothers*, 808 F.3d at 1147 (explaining that to substantially limit a person's the impairment must "significantly restrict[] [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."). Relevant factors to consider in determining whether an impairment is substantially limiting include the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Id.* § 1630.2(j)(2). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). The impairment need only "substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.*; *see also McKay v. Vitas Healthcare Corp. of Ill.*, 232 F. Supp. 3d 1038, 1043 (N.D. Ill. 2017).

Here, Plaintiff has not alleged, even in conclusory fashion, that Robey's bipolar disorder substantially limited a major life activity, nor has she alleged any facts that describe the nature or severity of Robey's bipolar disorder or how it impacted any of her major life activities. Plaintiff argues that alleging—via her Response—that Robey had bipolar disorder is sufficient to allege that her impairment was disabling, even without any allegations about the impact of the disorder on Robey. In support of this argument, Plaintiff relies on *Earl v. Espejo*, No. 17 C 195, 2017 WL 3704826, at *2 (N.D. Ill. Aug. 28, 2017) and *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 656 (7th Cir. 2001). In *Earl*, however, unlike here, the plaintiff's complaint included allegations that "indicate[d] that his illness substantially limited his ability to engage in the major life activities

7

of concentrating, thinking, and communicating." WL 3704826, at *2. In contrast, Plaintiff's Amended Complaint is devoid of allegations about how, if it all, Robey's illness impacted major life activities. *Brown* is similarly unpersuasive because, in that case, the Seventh Circuit merely stated that schizoaffective disorder *can* cause hallucinations, delusions, and other issues. 254 F.3d at 656. The court did not hold that all cases of bipolar schizoaffective disorder cause those issues or impact major life activities.

Indeed, as one court stated, "while bipolar disorder is certainly a serious condition, the Seventh Circuit has made clear that 'whether or not a medical condition rises to the level of a disability is to be made on an individualized case-by-case basis.'" *Leonard v. Uhlich Children's Advantage Network*, 481 F. Supp. 2d 931, 938 (N.D. Ill. 2007) (quoting *Kampmier v. Emeritus Corp.*, 472 F.3d 930 (7th Cir. 2007)). The Seventh Circuit has rejected ADA claims where the plaintiff had a mental impairment—including bipolar disorder—but failed to provide any facts indicating that the impairment impacted major life activities. In *Kiesewetter*, 295 F. App'x at 851, for example, the court explained that bipolar disorder "can be more or less severe" and rejecting the plaintiff's ADA claim because the plaintiff had failed to show that his bipolar disorder substantially limited any of his major life activities. *See also Graham v. Macy's Inc.*, No. 14 CIV. 3192 PAE, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (dismissing plaintiff's ADA claim because although she alleged she was bipolar, she did not "explain how that impairment 'substantially limit[ed] one or more' of [her] 'major life activities'" and thus did "not provide sufficient factual allegations to establish that [her] bipolar disorder was disabling."); *Jackson v. N. Ill. Univ. Coll. of Law*, No. 10 C 01994, 2010 WL 4928880, at *1 (N.D. Ill. Nov. 30, 2010) (dismissing ADA claim because plaintiff did not allege how her disability substantially limited any major life activities and only made the conclusory statement that it did); *Gomez v.*

*Dynamic Mfg., Inc.*, No. 12-CV-7396, 2013 WL 3270660, at *4 (N.D. Ill. June 27, 2013) (dismissing ADA claim because plaintiff did not sufficiently allege that his broken leg sufficiently limited a major life activity).

Here, as in *Kiesewetter*, *Graham*, and the other cited cases, Plaintiff has failed to provide any allegations explaining how, if at all, Robey's bipolar disorder substantially limited her major life activities, and accordingly, she has failed to sufficiently allege that Robey was a qualified individual under the ADA. The Court dismisses Plaintiff's ADA claim without prejudice.

**II.    Exigent Circumstances**

The City next argues that even if Robey was a qualified individual, the ADA does not apply to the encounter between Robey and the Officer Defendants and Robey was not entitled to an accommodation because the ADA does not cover police officers' on-the-street responses to reported public disturbances.

In support of its argument, the City cites *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). In that case, the police responded to a 911 call regarding a suicidal, depressed man carrying a knife—the plaintiff. *Id.* at 797. Police officers arrived on the scene, and when the plaintiff approached them with a knife in hand, they shot him twice. *Id.* The Fifth Circuit upheld the trial court's grant of summary judgment in favor of the city defendant and held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents . . . prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id.* at 801. The court explained that it was unreasonable to ask officers responding to a dangerous situation to factor in ADA accommodations in the presence of exigent circumstances. *Id.*

Other circuit courts,[1] however, have declined to follow the Fifth Circuit's approach, and have instead held that the ADA can apply to on-the-street arrests, but these courts have also held that the presence of exigent circumstances informs the reasonableness of police officers' responses and that an ADA claim is unlikely to succeed if exigent circumstances are present. *See, e.g. Bircoll v. Miami–Dade County,* 480 F.3d 1072, 1085 (11th Cir. 2007) (finding that the ADA covers arrests but noting that the "exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene go more to the reasonableness of the requested ADA modification than whether the ADA applies in the first instance"); *Gohier v. Enright,* 186 F.3d 1216, 1221 (10th Cir. 1999) ("a broad rule categorically excluding arrests from the scope of Title II . . . is not the law."); *Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171, 175–76 (4th Cir. 2009) (assuming for purpose of argument that duty of reasonable accommodation under ADA applied in police standoff situation but finding that ADA did not apply in specific circumstances at issue because of exigent circumstances); *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231–32 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom.* 135 S. Ct. 1765 (2015) (holding that the ADA applies to arrests but that "exigent circumstances inform the reasonableness analysis under the ADA").

Given this context, courts typically consider ADA claims relating to arrests at the summary judgment stage when they can assess the record to determine whether exigent circumstances were present. Where exigent circumstances were present, courts have rejected ADA reasonable accommodation claims. In *Sallenger v. City of Springfield*, No. 03-3093, 2005 WL 2001502 (C.D. Ill. Aug. 4, 2005), *aff'd sub nom. Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007), for example, a case upon which the City relies heavily, the plaintiff's son experienced a

---

[1] The Seventh Circuit has not yet resolved whether the ADA applies to on-the-street arrests.

severe psychotic episode and when police officers responded to her 911 call, they engaged in a physical struggle with her son and ultimately, her son died after the police restrained him in a restrictive device. The court granted the city government's motion for summary judgment because there were exigent circumstances present throughout the officers' struggle with the plaintiff's son. *Id.* at *31. The court explained that "[a]ny requirement to accommodate [the plaintiff's] disability during the course of his arrest would come into play once the exigent circumstances surrounding the struggle ceased." *Id. See also Vincent v. Town of Scarborough*, No. CIV. 02-239-PH, 2003 WL 22757940, at *26 (D. Me. Nov. 20, 2003) (granting summary judgment to government on ADA claim because exigent circumstances still existed—the area was not secure and there was still a threat to human life—when police shot plaintiff)

In contrast, where exigent circumstances were not present, courts have found that government entities can be held liable for failure to accommodate under the ADA in relation to on-the-street arrest situations. In *Spencer v. Dawson*, 2006 WL 3253574, at *3 (N.D. Ill. Nov. 7, 2006), for example, police officers responded to a dispute between the plaintiff, a deaf man, and his girlfriend's father. After the plaintiff became agitated, the police officers pepper sprayed him and immobilized him using force. *Id.* at *5. The city defendant moved for summary judgment and argued that Title II does not apply to an officer's on-the-street responses to reported disturbance, but the court denied the defendant's motion because, viewing the record in the plaintiff's favor, "there was no exigent threat to officers or third parties because [the plaintiff], while agitated and angry, was not threatening anyone's safety." *Id.* at *11. *See also Hogan v. City of Easton,* 2004 WL 1836992 (E.D. Pa. Aug.17, 2004) (finding a claim under Title II because the situation was secure when the officers arrived on the scene).

Here, assuming for the sake of argument and in line with the majority of circuit courts that the ADA does apply to arrests, it is simply premature to determine whether exigent circumstances existed in this case. The Amended Complaint alleges that Robey became upset in a CVS store, that she then sat on a CTA bench outside the store, that when police officers approached her she walked away, and that the officers then shot and killed her. (Am. Compl. ¶¶ 9-16.) Viewing these allegations in the light most favorable to Plaintiff, the Court cannot conclude at this stage that exigent circumstances existed as a matter of law such that the ADA's reasonable accommodation requirement did not apply. Accordingly, the Court denies the City's motion to dismiss on the basis that the ADA does not apply to an arrest involving exigent circumstances.

## III. Discrimination Based on Disability

The City also argues that Plaintiff has failed to state a claim under the ADA because she failed to sufficiently that the officers' failure to reasonably accommodate her was on account of her disability.

"[I]t is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999). The Seventh Circuit has held that a plaintiff can establish a Title II claim under the ADA "by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

Here, Plaintiff has alleged that Robey had a mental health disability and that the City failed to reasonably accommodate her by modifying its operations, services, and programs.

12

(Am. Compl. ¶¶ 60-61.) Plaintiff has also alleged that during the police officers' encounter with Robey, they "did nothing to de-escalate the situation, failed to consider Robey's mental health condition and instead continued to provoke her." (*Id.* ¶ 15.) Thus unlike in *Thompson v. Williamson Cnty., Tenn.*, 219 F.3d 555, 558 (6th Cir. 2000), which the City cites, where the court found at the summary judgment stage that "if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled," here, Plaintiff has alleged that the police officers' mistreatment of Robey was not due to her violent behavior and was instead directly related to their failure to address her mental health condition. Viewing these allegations in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that the officers' failure to reasonably accommodate her was on account of her disability. *Earl*, 2017 WL 3704826, at *3 (denying motion to dismiss and finding that plaintiff sufficiently alleged that officers failed to reasonably accommodate his bipolar disorder by arresting him and failing to recognize or respond to his mental health crisis); *Paine*, 2010 WL 785397, at *9 (allowing ADA claim to proceed on the theory that the defendants "fail[ed] to reasonably accommodate [the plaintiff's] known, and arguably manifest, mental illness by taking her for mental health care while she was in CPD custody"); *Spencer*, 2006 WL 3253574, at *11 (denying summary judgment where plaintiff provided evidence that officers arrested and pepper sprayed him because his disability prevented him from communicating with officers).

Accordingly, the Court denies the City's motion to dismiss on the basis that the officers' mistreatment of her was not based on her disability.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss without prejudice.

**Dated:** February 2, 2018

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**